THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ADRIANE JEFFERSON, individually and on behalf of all others similarly situated, *Plaintiff*, v. CREDIT ONE BANK, N.A., *Defendant*. | No. 21 C 532 Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adriane Jefferson sues Credit One Bank, N.A. ("Credit One"), individually and on behalf of a class of similarly-situated individuals, for violations of the Telephone Consumer Protection Act ("TCPA") 47 U.S.C. § 227 *et seq*. Before the Court is Credit One's motion to compel arbitration and dismiss the complaint for improper venue under Federal Rule of Civil Procedure 12(b)(3). (Dkt. 14). For the reasons that follow, Credit One's motion is granted.

## BACKGROUND

On April 11, 2020, Jefferson applied for a line of credit on Credit One's website. (Dkt. 15-1 at ¶ 6). During the application process, Credit One provided Jefferson with the Application Terms and Conditions, which alerted her to the existence of an agreement to arbitrate in the Cardholder Agreement. (*Id*.) The relevant notice read:

> **ARBITRATION**: Your Card Agreement includes an arbitration provision, which restricts your opportunity to have claims related to the account heard in court or resolved by a jury, and to participate in a class action or similar proceeding. Complete details will be in the Card Agreement sent with your card.

(Dkt. 15-2 at 2). Jefferson was required to acknowledge these terms and conditions prior to submitting her credit application. (Dkt. 15-1 at ¶ 7). Credit One approved Jefferson's application

1

on April 19, 2020 and mailed her a credit card, along with a paper copy of a Cardholder Agreement. (*Id*. at ¶ 9). The card and agreement were not returned to Credit One as undeliverable and Jefferson does not dispute that she received them. (*Id*. at ¶ 12). The Cardholder Agreement explains: "You accept this Agreement when you use the Account." (Dkt. 15-3 at 2). The agreement also contains following arbitration notice:

> **Arbitration:** This Agreement includes an Arbitration Provision with class action and jury trial waivers. You can reject the Arbitration Provision. See "How to REJECT this agreement to arbitrate" in the Arbitration section. If you do not, it will be part of this Agreement.

(*Id*.) The arbitration provision states in relevant part:

> **Arbitration Agreement**
>
> PLEASE READ CAREFULLY—IMPORTANT—AFFECTS YOUR LEGAL RIGHTS
>
> This agreement to arbitrate provides that you or we can require controversies or disputes between us to be resolved by BINDING ARBITRATION. You have the right to REJECT this agreement to arbitrate by using the procedure explained below. If you do not reject this agreement to arbitrate, you GIVE UP YOUR RIGHT TO GO TO COURT and controversies or disputes between us will be resolved by a NEUTRAL ARBITRATOR INSTEAD OF A JUDGE OR JURY, using rules that are simpler and more limited than in a court. Arbitrator decisions are subject to VERY LIMITED REVIEW BY A COURT. Arbitration will proceed INDIVIDUALLY— CLASS ACTIONS AND SIMILAR PROCEDURES WILL NOT BE AVAILABLE TO YOU.
>
> **Agreement to Arbitrate:** You and we agree that either you or we may, without the other's consent, require that controversies or disputes between you and us (all of which are called "Claims"), be submitted to mandatory, binding arbitration. This agreement to arbitrate is made pursuant to a transaction involving interstate commerce, and shall be governed by, and enforceable under, the Federal Arbitration Act (the "FAA"), 9 U.S.C. §1 et seq., and (to the extent State law is applicable), the laws of the State of Nevada.
>
> ...
>
> **How to REJECT this Agreement to Arbitrate:** You can reject this agreement to arbitrate but only if we receive from you a written notice of rejection within 45 days after it was first provided to you. To reject this agreement to arbitrate you must send

    the notice of rejection to: Credit One Bank, Attention: Arbitration Opt Out, P. O. Box 98873, Las Vegas, NV 89193-8873. Rejection notices sent to any other address will not be accepted or effective. If you decide to reject this agreement to arbitrate in writing, your notice must state that you reject this agreement to arbitrate and include your name, address, account number, and personal signature. Rejection of arbitration will not affect your other rights or responsibilities under this Card Agreement.

(*Id*. at 6–7). Credit One did not receive any communication from Jefferson indicating that she wished to opt out of the arbitration agreement. (Dkt. 15-1 at ¶ 14).

Jefferson activated her card and continued to use it between April and December 2020. (*Id*. at ¶ 17). After August 2020, however, Jefferson failed to make payments on her credit card for several months. (*Id*.) In early December 2020, Credit One called Jefferson using prerecorded messages to discuss her account and payment. (Dkt. 1 at ¶ 14) (*Id*. at ¶ 18). Jefferson asked Credit One to stop calling her. (Dkt. 1 at ¶ 15). Notwithstanding this directive, Credit One continued to call Jefferson using pre-recorded messages. (*Id*. at ¶ 16). On January 29, 2021, Jefferson filed the instant suit claiming that these phone calls violated her rights under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq*.

## LEGAL STANDARD

A motion to compel arbitration concerns venue and is thus, analyzed pursuant to Federal Rule of Civil Procedure 12(b)(3). *Jackson v. Payday Fin.*, LLC, 764 F.3d 765, 773 (7th Cir. 2014). When considering a Rule 12(b)(3) motion for improper venue, the Court "assumes the truth of the allegations in the plaintiff's complaint[,]" but "may look beyond the mere allegations of a complaint" to extrinsic exhibits and declarations offered by the parties. *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016). The Court must resolve factual conflicts and draw reasonable inferences in plaintiff's favor, "but accepts as true any facts in the defendants' affidavits that remain

3

unrefuted by the plaintiff." *Interlease Aviation Invs. II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 904 (N.D. Ill. 2003).

## DISCUSSION

The Federal Arbitration Act ("FAA") exhibits a clear policy in favor of enforcing arbitration agreements and sets out that "an agreement in writing to submit to arbitration ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2; *see also Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773–74 (7th Cir. 2014) ("As a general rule, courts must 'rigorously enforce' arbitration agreements according to their terms.") (*quoting Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 228 (2013)). [1] To prevail on a motion to compel arbitration, a party must show that: (1) there is a valid, written agreement to arbitrate; (2) the dispute is within the scope of the agreement; and (3) there is a refusal to arbitrate. *Zurich Am. Ins. Co. v. Watts Indus. Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The elements are analyzed similarly to the standard of review for summary judgement motions. *See e.g.*, *Johnson v. Orkin, LLC*, 928 F. Supp. 2d 989, 1001 (N.D. Ill. 2013) ("[T]he party opposing compelled arbitration will fail if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law"). Jefferson does not dispute that her

---

[1] Jefferson spends much of her opposition brief attacking the constitutionality of the FAA, arguing that compelling arbitration violates Article III's separation of powers mandate. Binding authority, however, has long upheld the validity of the statute unless Congress itself has precluded arbitration as a forum for the resolution of certain statutory rights. *See e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("It is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA. … [W]e recognized that by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. Although all statutory claims may not be appropriate for arbitration, having made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory rights at issue.") (internal quotations and citations omitted); *Koveleskie v. SBC Cap. Markets, Inc.*, 167 F.3d 361, 368–69 (7th Cir. 1999) ("The right to an Article III forum is waivable, and [plaintiff] waived this right by signing the Form U–4 and consenting to arbitration. … "[W]e are satisfied, as was the Court in *Gilmer*, that the arbitral forum adequately protects a[ ] [plaintiff]'s statutory rights, both substantively and procedurally.") The TCPA does not explicitly preclude arbitration. *See* 47 U.S.C. § 227 *et seq*. Thus, the Court is bound to follow the mandate of the FAA.

4

dispute falls within the scope of the agreement or that she refused to arbitrate. [2] The only dispute before the Court is whether a valid agreement to arbitrate exists.

Determining whether an arbitration agreement exists is a matter of state law. *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 857 (7th Cir. 2015) ("In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts."). Under Illinois law [3], the components of a valid contract are an offer, acceptance, and consideration. *DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004). There is no dispute that Credit One mailing Jefferson a credit card and a copy of a Cardholder Agreement constituted an offer to extend credit. *See Portfolio Acquisitions, L.L.C. v. Feltman*, 909 N.E.2d 876, 881 (2009) *(*"[T]he issuance of a credit card and cardholder agreement is a standing offer to extend credit that may be revoked at any time."). Jefferson maintains, however, that because she did not sign the agreement, she never accepted the terms of that Agreement, including the arbitration agreement contained therein. Illinois law is clear, however, that "use of the card by the cardholder makes a contract between the cardholder and the issuer." *Garber v. Harris Trust & Savings Bank*, 432 N.E.2d 1309, 1315 (Ill. App. Ct. 1982); *see also Portfolio Acquisitions,* 909 N.E.2d at 881 ("[E]ach time the credit card is used, a separate contract is formed between the cardholder and bank."); *Discover Bank v. Kulik*,

---

[2] Moreover, the issue of arbitrability is expressly covered by the arbitration provision. (Dkt. 15-3 at 6–7) ("Also, controversies or disputes about the … scope of this agreement to arbitrate or any part thereof are subject to arbitration and are for the arbitrator to decide."). It is, therefore, only appropriate for the Court to consider the question of whether a valid arbitration agreement exists and reserve the question of arbitrability to the arbitrator. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 528 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

[3] The parties disagree about the applicable state law. Credit One argues Nevada law governs because the Cardholder Agreement designates Nevada law as controlling, while Jefferson argues the law of the present forum, Illinois law, is applicable. A choice of law analysis is unnecessary, however, as the parties do not identify any dispositive differences between Nevada and Illinois law. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011). Thus, for purposes of the issue of contract formation the Court applies Illinois law.

2011 WL 10071859, at *5 (Ill. App. Ct. 2011) ("[A] credit card holder accepts the credit card issuer's offer to extend credit by using the card and the agreement becomes a contract between the parties.") (*citing Garber*); *Discover Bank v. Applegate*, 2017 WL 6554167, at *5 (Ill. App. Ct. 2017) ("[A] cardholder accepts the terms of the cardholder agreement through the use of the credit card.") (*citing Garber*). [4] There is no dispute that Jefferson used her credit card. Thus, by using the card Jefferson accepted the Cardholder Agreement's terms, including the arbitration provision, and she did so in consideration for Credit One's extension of credit.

Jefferson argues that an arbitration provision contained within a lengthy agreement, like the one at hand, cannot constitute a "knowing and voluntary" waiver of her litigation and trial rights. *See Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 685 (2015) (waiver of Article III right to adjudication must be "knowing and voluntary"). At the beginning of the Cardholder Agreement, Credit One included a notice alerting the cardholder to the arbitration provision that follows and dedicated two pages of the eleven-page Agreement to the arbitration provision. (Dkt. 15-3 at 2, 6–7). In addition, Credit One also notified Jefferson of the arbitration provision within the Cardholder Agreement at the time she applied for credit. (Dkt. 15-2 at 2). The arbitration provision itself utilizes bold font, underlining, and capital letters to ensure it is not overlooked by the cardholder. (Dkt. 15-3 at 6–7). Similar emphasizing formatting is used to alert the cardholder of her right to opt out of arbitration. (*Id.*) Under these circumstances, there is no reason to infer Jefferson's waiver was unknowing or involuntary simply due to the length of the Agreement. The evidence before the Court supports a finding of a valid agreement to arbitrate that this Court is bound to enforce.

---

[4] The Cardholder Agreement also specifies that the cardholder "accepts this Agreement when [she] uses[s] the Account." (Dkt. 15-3 at 2).

## **CONCLUSION**

For the foregoing reasons, Credit One's motion to compel arbitration and dismiss the complaint [14] is granted.

_____
Virginia M. Kendall
United States District Judge

Date: October 20, 2021